# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CRIMINAL NO. 05-0206-WS |
| ) | |
| WILLIE EARL CARTER, JR., ) | |
| ) | |
| Defendant/Petitioner. ) | |

## ORDER

This matter comes before the Court on defendant/petitioner Willie Earl Carter, Jr.'s Motion for New Trial (doc. 923) and accompanying Memorandum (doc. 924).

## I. Procedural History.

On March 16, 2006, following a nearly two-week trial, a federal jury in this District Court returned a unanimous verdict finding Carter guilty of multiple controlled substance offenses, including the following: (i) conspiracy to possess with intent to distribute morphine, oxycodone, hydrocodone, hydromorphone, methadone and cocaine base, in violation of 21 U.S.C. § 846; and (ii) two separate counts of possession within intent to distribute morphine and cocaine base within 1,000 feet of a school, in violation of 21 U.S.C. § 860. (Doc. 498.) As reflected in the undersigned's Judgment (doc. 633) entered on August 18, 2006, Carter was sentenced to a term of life imprisonment on the § 846 conviction, and concurrent terms of 60 years as to each of the § 860 convictions. On direct appeal, the Eleventh Circuit affirmed Carter's conviction and sentence via mandate issued on May 15, 2008. (Doc. 795.) The Supreme Court denied Carter's petition for writ of *certiorari* on October 6, 2008. *See Carter v. United States*, 129 S.Ct. 251, 172 L.Ed.2d 189 (2009). Carter has never filed a Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255.

On March 31, 2011, Carter filed a Motion for New Trial and accompanying Memorandum of Law. The stated basis for the Motion is that Carter has learned of "newly discovered evidence" that he contends "establishes Defendant's actual and factual and legal innocence." (Doc. 923, at 1.) This Motion is deficient in several key respects.

**II.     Analysis.**

As a threshold matter, Carter has not postured this Motion as a § 2255 petition. Instead, he relies solely on Rule 33(b)(1) of the Federal Rules of Criminal Procedure.[1] But Rule 33(b)(1) on its face provides that "[a]ny motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty." *Id.* This Circuit has routinely enforced that three-year limitation. *See, e.g., United States v. Rodriguez*, 2010 WL 4629011, *1 (11th Cir. Nov. 17, 2010) (district court did not abuse discretion in denying defendant's "untimely motion for a new trial" and related post-trial motion for discovery, where guilty verdict happened in April 2006 but defendant waited until December 2009 to file Rule 33 motion); *United States v. Fields*, 2006 WL 2570877, *1 (11th Cir. Sept. 7, 2006) ("Motions for new trial based on newly discovered evidence must be filed within three years of a guilty verdict"). Moreover, "[m]otions for a new trial based on newly discovered evidence are highly disfavored in the Eleventh Circuit and should be granted only with great caution." *United States v. Campa*, 459 F.3d 1121, 1151 (11th Cir. 2006); *United States v. Jernigan*, 341 F.3d 1273, 1287 (11th Cir. 2003) ("we have held that motions for a new trial are highly disfavored"). The date of the verdict in this case was March 16, 2006, more than five years before Carter filed his Rule 33 Motion. As such, his Motion for New Trial is time-barred on its face.[2]

---

[1]     This appears to have been an intentional, strategic decision by Carter designed to circumvent the one-year AEDPA deadline for filing any such § 2255 petition. *See* 28 U.S.C. § 2255(f). Under AEDPA, a § 2255 motion must be filed not later than one year from (i) the date the judgment of conviction became final, (ii) the date on which any governmental impediment to filing the motion was removed, (iii) the date the right asserted was initially recognized by the Supreme Court, or (iv) "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." *Id.* Nothing in Carter's filings suggests that he can satisfy the one-year deadline under any of these permutations. After all, his conviction became final in 2008, yet he waited to file this Motion until March 2011. And, as discussed *infra*, the "new evidence" on which Carter purports to rely consists of items that appear to have been known, available or reasonably discoverable to him through the exercise of diligence well over one year ago. In light of the glaring timeliness problem any § 2255 motion by Carter would confront, the Court will not liberally construe his Rule 33 Motion as one filed under § 2255, where he appears to have purposefully avoided invoking the § 2255 mechanism.

[2]     Notwithstanding his attempts to do so, Carter cannot cure this timeliness defect by invoking Rule 60(b) of the Federal Rules of Civil Procedure or 28 U.S.C. § 1651. Rule 60(b) has no application to criminal cases. *See United States v. Fair*, 326 F.3d 1317, 1318 (11th Cir. 2003) (Continued)

Even if Carter's Motion for New Trial were timely (which it is not), it would still be properly denied. To procure a new trial based on newly discovered evidence, a convicted defendant must satisfy stringent proof requirements. In particular, "[a] new trial is warranted based upon circumstances coming to light after trial only if the following five part test is satisfied: (1) the evidence was in fact discovered after trial; (2) the defendant exercised due care to discover the evidence; (3) the evidence was not merely cumulative or impeaching; (4) the evidence was material; and (5) the evidence was of such a nature that a new trial would probably produce a different result." *United States v. Lee*, 68 F.3d 1267, 1273 (11th Cir. 1995); *see also United States v. Schlei*, 122 F.3d 944, 991 (11th Cir. 1997) (similar). "The failure to satisfy any one of these elements is fatal to a motion for new trial." *Lee*, 68 F.3d at 1274.

Carter's Motion does not specify what, exactly, his newly discovered evidence is. He points out that three defendants (Kimberly Yvonne Westry, Raphael Francoise Gregory, and Willie Moses Spencer) were acquitted after a separate trial in which the Government accused them of participating in the same controlled substance conspiracy of which Carter was convicted. But the jury returned its verdict in that trial (over which this Court presided) on December 17, 2007, or more than three years ago. *See United States v. Kimberly Yvonne Westry, et al.*, Criminal No. 06-0283-WS, docket # 261. The outcome of that trial is plainly not new evidence. The only specifics identified by Carter as to the "new evidence" arising from the trial in Criminal No. 06-0283 are that, according to Carter, the Government admitted "that they have tried some of Defendant's codefendants on the wrong counts – thus Defendant could not have conspired with them to do those acts – and that certain witnesses [Agent Joseph Wolfe, et al.] testified

---

("Rule 60(b) simply does not provide for relief from judgment in a criminal case.") (citation omitted); *Serrano v. United States*, 2011 WL 227655, *2 (11th Cir. Jan. 26, 2011) ("Rule 60(b) cannot be used to obtain relief from a judgment in a criminal case."). And any request by Carter for a writ of *coram nobis* or a writ of *audita querela* under § 1651 would be doomed as a matter of law. *See, e.g., United States v. Frank*, 2011 WL 493107, *1 (11th Cir. Feb. 14, 2011) ("Relief under the writ of *coram nobis*, as a matter of law, is unavailable to persons in custody because such persons may avail themselves of the statutory remedies in 28 U.S.C. § 2255."); *United States v. Holt*, 417 F.3d 1172, 1175 (11th Cir. 2005) ("we hold that a writ of *audita querela* may not be granted when relief is cognizable under § 2255"); *United States v. Brown*, 117 F.3d 471, 475 (11th Cir. 1997) ("Because Brown was in custody within the meaning of § 2255 when he filed his petition in the district court, *coram nobis* relief was unavailable to him, and § 2255 was his exclusive remedy.").

falsely," such that the record established that "all police officers and others committed perjured testimony at Defendant's trial as to Defendant's conspiracy with both of these women." (Doc. 923, at 2.)

Carter misstates the events in Criminal No. 06-0283. Substantial confusion was injected into that case because there were two Kimberly Westrys, a Kimberly K. Westry (who was indicted with Carter and who pled guilty to the conspiracy count before trial) and a Kimberly Y. Westry (who was tried and acquitted later in Criminal No. 06-0283). The two Kimberly Westrys are first cousins. After Kimberly K. pled guilty to the conspiracy count in case 05-206 (Carter's case), the Government indicted Kimberly Y. in case 06-283 on certain substantive counts with which Kimberly K. had originally been charged. The ensuing investigation, motion practice and trial testimony revealed that the Government's case agent (Agent Wolfe) had previously testified at a detention hearing that Kimberly K. was the perpetrator of certain narcotics transactions that the Government now charged Kimberly Y. with performing. *See generally United States v. Westry*, 2007 WL 4358249 (S.D. Ala. Dec. 10, 2007) (describing and analyzing these "mistaken identity" issues in detail). The Kimberly Y. / Kimberly K. mix-up may well have facilitated Kimberly Y.'s acquittal by the jury in Criminal No. 06-0283. But it does not have anything to do with Carter. None of the evidence regarding the Kimberly Y. / Kimberly K. confusion reasonably calls into question Carter's guilt or innocence for the offenses of which he was convicted. At most, this line of evidence would have given him a basis for impeaching Agent Wolfe's testimony about a matter that was collateral as to Carter. Of course, that is not sufficient to justify a new trial under Rule 33.

The evidence of Carter's guilt presented at trial was overwhelming, and was not anchored to the testimony of Agent Wolfe or any nexus between Carter and either of the Kimberly Westrys. In fact, the trial evidence implicating Carter in this large-scale controlled substance distribution ring included the following: (i) testimony by co-defendant Shannon Jones that Carter (her uncle) had been selling pills and cocaine for as long as she could remember; (ii) testimony by co-defendant Leonard Westry that he had accompanied Carter (his uncle-in-law) to purchase crack cocaine and had seen Carter sell pills at the Clay Street home that marked the epicenter of the conspirators' narcotic distribution activities; (iii) testimony by co-defendant Christina Hogue that she had seen Carter sell crack cocaine and pills on a daily basis; (iv) testimony by co-defendant Samuel Beckham that he had seen Carter sell pills since 2003 and that Carter had

supplied Beckham with oxycontin and morphine pills for resale by Beckham at the Clay Street distribution hub; (v) evidence that Carter had sold morphine and crack cocaine to undercover informants in controlled buys on at least two occasions (with video recording(s) depicting Carter); (vi) testimony from several different drug users that they had purchased drugs from Carter at the Clay Street address on literally dozens of occasions; and (vii) testimony that Carter had supplied the specific drugs to an addict, Jasen Johns, that resulted in Johns' death at the Clay Street location. Considered against this daunting factual backdrop, confusion or inconsistency in Agent Wolfe's testimony as to which Kimberly Westry had committed certain charged acts would not likely have made any difference in Carter's trial.

Aside from the Kimberly Westry issue, Carter suggests that he has unspecified new evidence because he can now call to testify on his behalf certain co-defendants (Kingston Osborne, Kimberly Y. Westry, Spencer and Gregory) who had previously exercised their Fifth Amendment privilege against self-incrimination. As a threshold matter, this evidence is not "newly discovered" merely because it was not available to Carter at the time of his initial trial. There is no allegation, for example, that Carter did not know (and could have discovered) the substance of these witnesses' testimony before his trial, so this category of evidence does not qualify as "newly discovered" for Rule 33 purposes. More fundamentally, Carter does not indicate what any of these witnesses would say except to assert that he expects their testimony "to establish that all the government's witnesses had committed perjured testimony." (Doc. 923, at 3.) In other words, Carter requests a new trial so that he can call acquitted co-conspirators to testify that the Government's witnesses are all liars. This kind of vague impeachment evidence does not qualify as newly discovered evidence justifying a new trial under Rule 33.

Carter also indicates that he wishes to call his convicted co-defendant Mack David Woodyard "to testify as to how their defense was sabotaged from the very beginning by conflicted defense counsel." (Doc. 923, at 3.) Carter elaborates that Woodyard would testify that Woodyard's "court-appointed counsel had formerly criminally prosecuted him in state criminal court." (Doc. 924, at 2.) Even assuming that were true, Carter makes no showing, and identifies no reason to believe, that any conflict or deficiency in Woodyard's counsel somehow compromised the integrity of the trial proceedings as to Carter. Woodyard's lawyer did not represent Carter; rather, Carter had his own counsel. In fact, Carter admits that he does not know of any adverse effects of Woodyard's purported conflicted counsel on Carter's defense, stating

that "it is not yet known what damage may have resulted by having conflicted counsel involved." (*Id.*)  At its core, then, this argument hinges on self-serving, unfounded speculation and conjecture that fails to support any inference capable of satisfying the specific, rigorous requirements for Rule 33 relief.

Carter further states that he wishes to use "this newly discovered evidence" for the purpose of calling into question "the credentials of Expert Witness, Dr. Kathleen Enstice." (Doc. 923, at 3.)  The fundamental problem with this line of attack is that Dr. Enstice was not a testifying witness at Carter's trial.  To be sure, Dr. Enstice was a medical examiner involved in performing the autopsy on the body of the decedent, Jasen Johns, which formed the basis of the death enhancement in Carter's sentence.  (*See* doc. 262.)  But Carter and the other defendants in 05-206 stipulated to the admissibility of "Government's Exhibit 9-H, which is the medical examiner's report relating to the death of Jas[e]n Johns.  The parties have agreed that that report is admissible along with the findings that are contained in the report by stipulation." (Trial Transcript (doc. 672), at 340.)  So even if Carter has "newly discovered evidence" impugning the credentials of Dr. Enstice, which he has not identified or shown in any way, such evidence appears neither material nor reasonably likely to produce a different result at a new trial given Carter's own voluntary stipulation to the admissibility of the underlying medical examiner's report at his initial trial.  Simply put, defendant has not shown that he has any evidence concerning Dr. Enstice that might warrant granting him a new trial under Rule 33.[3]

Defendant's next argument consists of speculation (in the guise of a statement "on information and belief") that after his trial, the Government has come to possess evidence "that exonerated Defendant of any criminal conspiracy." (Doc. 923, at 4.)  Carter identifies no factual

---

[3]  Incidentally, Dr. Enstice did testify in the second *Westry* trial, Criminal No. 06-0283, in December 2007.  At that time, Dr. Enstice indicated that she had been called to the Clay Street drug distribution site on November 27, 2001 to examine Johns' body, and that she had performed further examination in the laboratory on November 28, 2001.  Dr. Enstice explained in detail the grounds for her conclusions that the cause of death was methadone intoxication, with recent cocaine use as a contributing factor.  Nothing in Dr. Enstice's testimony "called into question" her credentials, as Carter now wishes to do, nor is there any reason to believe that she "disappeared at the end of Defendant's trial" as Carter alleges.  (Doc. 923, at 3.)  In short, not a word of Dr. Enstice's testimony in Criminal No. 06-0283 constitutes "newly discovered evidence" that might be reasonably likely to produce a different outcome in Carter's case if he were to receive a new trial.

basis for his belief that such exculpatory evidence exists; however, he parlays this rank supposition into a demand that "all evidence pertaining to [Criminal No. 06-283] should be turned over to the Defendant, including all evidence presented to the grand jury," under the auspices of *Brady v. Maryland.* (*Id.*) Such an open-ended fishing expedition is improper, and misapprehends the scope and reach of *Brady. See, e.g., District Attorney's Office for Third Judicial Dist. v. Osborne*, --- U.S. ----, 129 S.Ct. 2308, 2319-20, 174 L.Ed.2d 38 (2009) (observing that "nothing in our precedents suggested that this [*Brady*] disclosure obligation continued after the defendant was convicted and the case was closed" and finding that "*Brady* is the wrong framework" for post-conviction disclosure because convicted defendant's right to due process "must be analyzed in light of the fact that he has already been found guilty at a fair trial, and has only a limited interest in postconviction relief"); *United States v. Arias-Izquierdo*, 449 F.3d 1168, 1189 (11th Cir. 2006) (where defendant raises *Brady* issue after trial, Eleventh Circuit declines "to order discovery based upon mere speculation as to whether the material would contain exculpatory evidence because to do so would convert *Brady* into a discovery device and impose an undue burden upon the district court") (citation and internal quotation marks omitted). Carter has not come forward with any basis for Rule 33 relief or post-trial discovery, much less any reason to think that he might be factually and legally innocent of conspiracy to possess with intent to distribute controlled substances, particularly given the extensive, compelling evidence of guilt presented to the jury that convicted him.

**III. Conclusion.**

In sum, Carter's Motion for New Trial cannot prevail because it is untimely, there does not appear to be any newly discovered evidence, the evidence in question is merely impeaching and is not material to the charges against Carter, and the evidence is not of such a nature that a new trial would probably produce a different result. For all of these reasons, the Motion for New Trial (doc. 923) is **denied** in its entirety.

DONE and ORDERED this 20th day of April, 2011.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE